REGAN, Judge.
This proceeding was instituted in an endeavor to obtain the homologation of the results of an election of the Board of Trustees of the Rose Hill Baptist Church, which was ordered by this court in a prior opinion.[1]
The election resulted in a victory for the defendants, the incumbent Board, and the plaintiffs filed an opposition to the motion to homologate, predicated upon the invalidity of several of the votes cast for the defendants.
Following a hearing in the lower court, a judgment was rendered homologating the results of the election, and from this judgment the plaintiffs have appealed.
This is the third of a series of appeals prosecuted in these proceedings, the purpose of which was to compel the pastor of the Rose Hill Baptist Church to call a meeting of the membership thereof in order to hold an election in conformity with the charter and the nonprofit corporation statutes. Initially it was asserted that the defendants were elected to the Board of Trustees by virtue of an election which was illegally called and subsequently occurred without the presence of a quorum. It was also asserted that the plaintiffs, some of whom claim to be bona fide members of the Board of Trustees, were illegally expelled from membership.
In the first appeal which occurred in consequence of this litigation,[2] we remanded the case to the lower court with instructions to order a meeting of the entire membership, including all expelled members, for the purpose of electing a Board of Trustees to succeed the Board presently in office.
In the subsequent appeal,[3] certain charter amendments executed by the defendants were, in our opinion, illegally enacted, and *687 the list of qualified voters was limited to those members eligible before this proceeding was instituted.
Thereafter an election was held on June 4, 1963, and as a result thereof the defendants obtained 124 votes as opposed to 107 votes for the plaintiffs. However, no application was ever made for the homologation of these returns. Subsequently, another election occurred on January 7, 1964, and as a result thereof the defendants’ candidates received 116 votes, and the plaintiffs’ candidates 113 votes.
These results were challenged by the plaintiffs through the medium of an opposition to the defendants’ rule to homolo-gate, predicated upon the minority of some of the voters, discrepancies in signatures between proxies used by the defendants in the June 1963 election and the January 1964 election, dual proxies, variations in spelling of signatures between the two sets of proxies used by the defendants, and numerous other causes relating to the inability of the plaintiffs to locate many of the persons who no longer were active in the congregation.
On appeal, the foregoing general reasons for opposing the homologation of the election results have been reduced to three specific objections. Initially the plaintiffs insist that four of the votes cast for the defendants’ candidate were invalid since the voters were under the age of majority. Secondly, they argue that the lower court erred in refusing to admit expert testimony to prove that the signatures of Mary Jackson, Elmira East, and Elizabeth Williams inscribed on various proxies voted by the defendants were not genuine, and by deciding the validity of the proxies cast by these three women on the basis of their testimony which was adduced subsequent to the act by which they were purported to have given their proxies. Third, they contend that they should have been awarded the vote of an individual designated by the name of Homer Times, since the proxy which he gave them was dated subsequent to a proxy which he gave to the defendants and contained a revocation clause.
The evidence and the documents which appear in the record clearly reveal that the plaintiffs’ first contention is without merit. On December 23, 1963, plaintiffs filed a petition requesting an election under court supervision and that a document designated as “P. 17” be considered as a list of the eligible voters of the congregation. Judgment was rendered in conformity with plaintiffs’ prayer, and this list has been considered the qualified tabulation of voters ever since. Under these Circumstances, even assuming arguendo, a view which the plaintiffs consider most favorable, that minors are not eligible to vote in church elections under Louisiana law, the plaintiffs are not now entitled to complain that some individuals whose names appear on the list of voters, referred to above, are not now qualified to vote.
Plaintiffs’ second contention is likewise without merit. They have endeavored to invalidate the proxies given by three women of the congregation, all of whom testified as witnesses for the plaintiffs that they signed the disputed proxies. These women related freely that the questionable signatures appearing on the proxies were theirs, and once an individual so testifies the signature is his or hers pro hac vice. Since they acknowledged the signatures as their own, any contrary testimony by a handwriting expert would have served no useful legal purpose. Therefore, the lower court correctly excluded the testimony of this expert who was tendered by the plaintiffs.
In view of what we have said herein-above, it is obvious that the vote of Homer Times could not have altered the results of the election irrespective of which contentious faction received it. Therefore, for the sake of brevity, we pretermit a discussion of the plaintiffs’ third contention.
For the foregoing reasons, the judgment of the lower court is affirmed. The plaintiffs are to pay all costs not heretofore awarded in these proceedings.
Affirmed.

. See State ex rel. Nelson v. Ellis, La.App., 140 So.2d 194 (1962); State ex rel. Nelson v. Ellis, La.App., 151 So.2d 544 (1963).

. See Footnote 1, Supra.

. See Footnote 1, Supra.